UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
CARMEN JANE,


                                Plaintiff,                          **MEMORANDUM AND ORDER**

                    -against-                                       24-CV-08853 (OEM) (PK)


SEEMA BHANSALI, DAVID KOCHMAN, ARCHANA
NARAYANAN, and HENRY SCHEIN, INC.,

                                        Defendants.
------------------------------------------------------------------------x

ORELIA E. MERCHANT, United States District Judge:

*Pro se* Plaintiff Carmen Jane ("Plaintiff") commenced this gender and gender-orientation

discrimination and retaliation action against her former employer Henry Schein, Inc. ("Henry

Schein"), Seema Bhansali ("Bhansali"), David Kochman ("Kochman"), and Archana Narayanan

("Narayanan") ("Defendants").   Specifically, Plaintiff brings claims against Defendants for

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the

New York City Human Rights Law, N.Y. CITY ADMIN. CODE §§ 8-101 *et seq.* ("NYCHRL"), and

the New York State Human Rights Law, N.Y. EXEC. LAW §§ 290 *et seq.* ("NYSHRL").  *See*

*generally* Amended Complaint and Demand for Jury Trial, Dkt. 15 ("Amended Complaint" or

"Am. Compl.").   Before the Court is Defendants' fully briefed motion to dismiss.[1]   For the

following reasons, Defendants' Motion is granted in part and denied in part.

---

[1] Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, Dkt. 22 (the "Motion" or "Mot.");
Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, Dkt. 16 (the "Opposition" or
"Opp'n"); Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Complaint, Dkt. 24
(the "Reply").

**BACKGROUND**[2]

**A. The Parties**

Plaintiff is a Transgender ("Trans") female.  Am. Compl. ¶ 23.  Plaintiff worked as the Diversity and Inclusion Manager of Henry Schein from March 7, 2022, until she was terminated on June 21, 2022.  *Id.* ¶ 22.  Bhansali is the Vice President of Employee Experience at Henry Schein and was Plaintiff's direct supervisor.  *Id.* ¶¶ 21, 29.  Kochman is the Chief Corporate Affairs Officer at Henry Schein.  *Id.* ¶ 21.  Narayanan is the Human Resources Director.  *Id.*  During her hiring process, Plaintiff disclosed her Trans identity to Bhansali.  *Id.* ¶ 25.  Plaintiff was hired as a remote employee and was told during her hiring process that in-person engagement was optional. *Id.* ¶ 28.

**B. The Alleged Discriminatory Conduct**

Plaintiff alleges that Kochman asked her to attend the annual National Sales Meeting ("NSM") in Dallas, Texas, taking place in June 2022.  *Id.* ¶ 26.  Kochman stated the trip was optional, but Bhansali told her that her attendance at the NSM was mandatory.  *Id.* ¶ 27.

Plaintiff attended the NSM, beginning on or about June 10, 2022.  *Id.* ¶ 31.  At the opening ceremony, a video skit was played on a large screen.  According to Plaintiff,  a "child in the video pointed to the screen and stated: 'Isn't that the woman you said was a boy?'"  *Id.* ¶ 33.  Plaintiff "wasn't sure if what she heard was correct as the dialogue was difficult to hear and it happened very quickly, but was deeply embarrassed given her uncertainty and being that this was the first time that she was spending time with colleagues in person."  *Id.* ¶ 34.

The next day, Plaintiff staffed the diversity and inclusion booth.  *Id.* ¶ 39.  She wore a colorful, two-piece striped suit, comprising shorts and a blazer.  *Id.* ¶ 40.  Plaintiff alleges that an

---

[2] The following facts taken from Plaintiff's Amended Complaint are accepted as true for the purposes of Defendants' Motion.  The Court recites only those facts relevant to resolving the pending Motion.

"unidentified white male employee of [Henry Schein]" walked over to the booth and told Plaintiff that he liked her suit. *Id.* ¶¶ 42-43. Plaintiff responded by saying "she felt as if she looked like a candy cane because of the stripes and her tall frame[.]" *Id.* ¶ 43 He then looked her "up and down, licked his lips and said 'you sure look yummy enough to eat' with a smile in a sexually suggestive tone[.]" *Id.* ¶ 44.

After the NSM and on or about June 16, 2022, Plaintiff had her weekly one-on-one meeting with Bhansali. *Id.* ¶ 48. Plaintiff shared her experience, recounting the opening video "with the potential transgender joke, and the 'yummy enough to eat' comment made by the unidentified white male." *Id.* ¶ 49. Plaintiff suggested that diversity, equity, and inclusion training should be mandated. *Id.* She also expressed the embarrassment and awkwardness that she felt. *Id.* Bhansali assured Plaintiff that she would look into the video and comment to find a resolution. *Id.* ¶ 50.

Plaintiff returned to work on June 21, 2022, and received an email from Bhansali asking to meet at 3:00 p.m. that day. *Id.* ¶ 54. Plaintiff, Bhansali, and Narayanan attended, *id.* ¶ 55, and Bhansali told Plaintiff that the "employment relationship was not working out due to a poor fit" and terminated her employment, effective immediately, *id.* ¶ 56. Plaintiff told Bhansali that she felt like she was being terminated because of the allegations she raised the week prior. *Id.* ¶ 58. Bhansali said the issues were "completely separate." *Id.* Bhansali stated that "she didn't realize the video and comment from the NSM was a problem for [Plaintiff] or she would've taken it more seriously." *Id.* ¶ 59. Narayanan and Bhansali said they would investigate both claims, but Plaintiff's termination remained effective immediately. *Id.* ¶ 63. No performance issues were raised or discussed with Plaintiff prior to her one-on-one meeting with Bhansali. *Id.* ¶ 64.

### C.  Relevant Procedural History

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging discrimination based on "sex" and "retaliation" in violation of Title VII of the Civil Rights Act of 1964.  *Id.* ¶ 6. On or about September 24, 2024, Plaintiff received a Notice of Right to Sue from the EEOC.  *Id.* ¶ 7.

Plaintiff instituted the instant action ninety days later, on December 23, 2024.  *See generally* Complaint and Demand for Jury Trial, Dkt. 1 (the "Complaint" or "Compl.").  After receiving an extension of time to respond to the Complaint, Defendants requested a pre-motion conference in anticipation of a motion to dismiss on April 7, 2025.  *See* Letter from Defendants to the Court (Apr. 7, 2025), Dkt. 11.  The Court denied the request and set a briefing schedule.  *See* Order, dated Apr. 16, 2025.  Defendants accordingly served their Motion on May 19, 2025, and filed a cover letter on the docket confirming service.  *See* Letter serving motion to dismiss on pro se Plaintiff Carmen Jane (May 19, 2025), Dkt. 14.  On June 10, 2025, however, Plaintiff filed her Amended Complaint, *see generally* Am. Compl., and on June 16, 2025, Plaintiff served her Opposition.  On June 24, 2025, Defendants filed a letter asking the Court to apply their pending Motion to Plaintiff's Amended Complaint and for an extension of time to submit their Reply.  *See* Letter from Defendants to the Court (June 24, 2025), Dkt. 17.  The Court granted Defendants' request on June 26, 2025, and on July 10, 2025, Defendants served their Reply and filed their fully briefed Motion.  *See generally* Mot.; Opp'n; Reply.

## LEGAL STANDARD

Defendants seek to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if the alleged facts allow a court to reasonably infer "that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The principle that a court must accept the allegations in a complaint as true does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.* (citing *Twombly*, 550 U.S. at 555).

In reviewing a *pro se* complaint, the Court is mindful that a plaintiff's pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly*," the Court "remain[s] obligated to construe a *pro se* complaint liberally." (citations omitted)).

## DISCUSSION

Plaintiff asserts six causes of action for discrimination and retaliation under Title VII, NYSHRL, and NYCHRL against all Defendants: (1) violation of Title VII for gender and gender-orientation discrimination; (2) violation of Title VII for retaliation; (3) violation of NYCHRL for gender and gender-orientation discrimination; (4) violation of NYCHRL for retaliation; (5) violation of NYSHRL for gender and gender-orientation discrimination; and (6) violation of NYSHRL for retaliation.  Am. Compl. ¶¶ 69-111.

NYSHRL makes it unlawful for an employer to discriminate based on an individual's sex or gender identity, N.Y. EXEC. LAW § 296(1)(a), and the NYCHRL prohibits gender discrimination in the workplace, N.Y.C. ADMIN. CODE § 8-107(1)(a)(3).  Plaintiff's EEOC Charge of Discrimination alleges discrimination based on "sex."[3]  Am. Compl. ¶ 6.  Title VII's prohibition

---

[3] Plaintiff only has a basis to allege discrimination under Title VII based on sex.  That is, she exhausted her administrative remedies before initiating this suit through her EEOC Charge of Discrimination based on "sex."  *See*

5

of discrimination based on sex, 42 U.S.C. § 2000e-2(a)(1), includes discrimination based on an individual's sexual orientation or gender identity. *Bostock v. Clayton County*, 590 U.S. 644, 683 (2020). Thus, while "gender orientation" is not a recognized protected class, the Court liberally construes Plaintiff's "gender orientation" discrimination claims under Title VII as claims of discrimination based on sex and her claims under NYSHRL and NYCHRL as claims of discrimination based on sex and gender, respectively.

### A. Plaintiff's Title VII Claims Against Individual Defendants

Plaintiff asserts her Title VII discrimination claims against all Defendants, including individuals Bhansali, Kochman, and Narayanan ("Individual Defendants"). Am. Compl. ¶¶ 69-74. Individual Defendants argue that Title VII does not provide for individual liability for discrimination. Mot. at 8. In response, Plaintiff acknowledges that the U.S. Court of Appeals for the Second Circuit does not recognize individual liability under Title VII, yet Plaintiff urges the Court to follow precedent set in the U.S. Court of Appeals for the Fourth Circuit that recognizes individual liability for supervisors with "significant control." Opp'n at 4 (citing *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir. 1989)).[4]

"Title VII 'does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers.'" *Littlejohn v. City of New York*, 795 F.3d 297, 313 (2d Cir. 2015) (quoting *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014)); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) ("[I]ndividual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII."); *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023)

---

*Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 649 (2d Cir. 2011) ("Before filing a Title VII claim in federal court, a plaintiff must exhaust all available administrative remedies. . . . An allegation not set forth in an administrative charge will be barred as unexhausted unless it is reasonably related to the allegations in the charge." (internal citations omitted)); *see also* 42 U.S.C. §§ 2000e-5(e)(1), (f)(1).

[4] Page citations to the Opposition refer to the automatically generated ECF PageID pagination on the top right corner of the page.

("[I]ndividuals are not subject to liability under Title VII." (quoting *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000))).  The Court is bound to follow Second Circuit precedent.

Accordingly, Plaintiff's Title VII discrimination and retaliation claims as to the Individual Defendants are dismissed.

### B. Plaintiff's Discrimination Claims

Plaintiff claims that Defendants discriminated against her when they took adverse employment actions against her.  Am. Compl. ¶¶ 70, 83-84, 100-01, 106.  Specifically, Plaintiff asserts that Defendants discriminated against her in choosing to ignore her complaints about discrimination, failing to take reasonable steps to prevent such discrimination, providing unjustified performance reviews, harassing her, overworking her, placing her on furlough, and terminating her.[5]  *Id.*  Defendants argue that (1) Plaintiff has not pleaded facts showing that she was subjected to an adverse action due to her gender or gender orientation; (2) Plaintiff's perception that she was discriminated against is insufficient to support a claim of Title VII discrimination, Mot. at 8-12; and (3) her NYSHRL and NYCHRL claims fail because she does not plausibly allege that she was treated "less favorably than other employees due to her gender/gender orientation[,]" *id.* at 15-16.

### 1. Discrimination Claim Under Title VII

Title VII prohibits an employer from discriminating "against any individual with respect to the compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1); *see also Ricci v.*

---

[5] Plaintiff asserts that Defendants provided "unjustified performance reviews," "overworked" her, and placed her on furlough but fails to put forward any facts supporting those assertions.  Am. Compl. ¶¶ 70, 100, 106.  These conclusory allegations are insufficient to pass the Rule 12(b)(6) pleading standard.  *See Adams v. Northstar Location Servs., LLC*, 2010 WL 3911415, at *3 (W.D.N.Y.) (dismissing plaintiff's Title VII discrimination claims for failure to allege facts of her termination that give rise to an inference of gender discrimination beyond vague and conclusory allegations).

*DeStefano*, 557 U.S. 557, 577 (2009). "[T]o properly assert a claim of discrimination against an employer under Title VII, a plaintiff must 'allege two elements: (1) the employer discriminated against [her] (2) because of [her] race, color, religion, sex, or national origin.'" *Buon*, 65 F.4th at 78 (alteration in original) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015)). More specifically, for a Title VII discrimination claim to survive a motion to dismiss, a plaintiff must plausibly allege four factors: "that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Buon*, 65 F.4th at 79.

Neither party disputes that Plaintiff was a member of a protected class or that she was qualified. Thus, the Court addresses in turn whether Plaintiff has plausibly alleged (1) an adverse employment action and (2) that Henry Schein was motivated by discriminatory intent.

### a. Adverse Employment Action

An adverse employment action is a "materially adverse change in the terms and conditions of employment" that "is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006)). It is well settled that termination constitutes an adverse employment action. *See Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (explaining that employment actions that constitute adverse employment action include termination, demotion, decrease in wage or salary, a less distinguished title, a material loss of benefits, diminished material responsibilities, "or other indices . . . unique to a particular situation"); *Buon*, 65 F.4th at 79 ("Examples of materially adverse changes include termination of employment.") (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). A failure to properly investigate complaints of

8

discrimination may not, however, constitute an adverse employment action. *See Hayes v. Kerik*, 414 F. Supp. 2d 193, 203 (E.D.N.Y. 2006); *Gordon v. New York City Transit Auth.*, 24-CV-3411, 2024 WL 5217932, at *9-10 (E.D.N.Y. Dec. 26, 2024) (considering the plaintiff's allegations, including manager inaction on the reports he lodged, and holding that the plaintiff failed to plausibly allege gender discrimination). By alleging that she was terminated, Plaintiff has plausibly alleged an adverse employment action.

### b. Discriminatory Intent

To plausibly allege that Henry Schein was motivated by discriminatory intent, Plaintiff must assert that her termination was "because of" her sex. *See Buon*, 65 F.4th at 82-83 ("[A]n action is 'because of' a plaintiff's race, color, religion, sex, or national origin where it was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action." (quoting *Vega*, 801 F.3d at 85)). To do so at the motion to dismiss stage, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason . . . by [either] alleging facts that *directly* show discrimination *or* facts that *indirectly* show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 83 (alteration in original) (emphasis in original) (quoting *Vega*, 801 F.3d at 87). Plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311.

Since Plaintiff does not allege facts directly showing discrimination, the Court considers whether Plaintiff's allegations support an inference of discrimination.

> An inference of discrimination can arise from circumstances including, but not limited to, "the employer's criticism of the plaintiff's performance in [] degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."

*Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)); *see e.g.*, *Buon*, 65 F.4th at 83-84 (finding that the plaintiff's list of at least five instances of "job

requirements and [] discipline that [were] different than employees outside her protected class" was "more than sufficient" to plausibly allege an inference of unlawful discrimination).

Plaintiff fails to plausibly allege discriminatory intent.  In her Amended Complaint, Plaintiff relies on the sequence of events leading to her termination as evidence of discriminatory intent.  She alleges that she disclosed that she is Trans to Bhansali when she was hired.  Am. Compl. ¶ 25.  She asserts that Bhansali forced her to attend the NSM despite her remote-work agreement.  *Id.* ¶¶ 15, 71.  And she contends that Bhansali pretextually terminated her on the basis that "the employment relationship was not working out due to a poor fit" and that the termination was "completely separate" from the concerns Plaintiff raised after the NSM.  *Id.* ¶¶ 15, 56, 58.  Lacking from this sequence, however, is any fact shedding light on Henry Schein's discriminatory animus towards her status as a Trans woman, apart from the conclusory allegation that her termination was "because of" her protected status.  Courts reject the false syllogism that "I am (fill in the protected class of which the plaintiff is a member); something bad happened to me at work; therefore the bad thing happened because I am (fill in the protected class)[.]" *Lugo v. Lesbian & Gay Cmtys. Serv. Ctr.*, 21-cv-07423 (MMG), 2024 WL 5168042, at *4 (S.D.N.Y. Dec. 19, 2024).  Thus, even as indirect evidence, these facts are insufficient to establish a minimal inference of discriminatory intent.  *See id.* (dismissing the *pro se* plaintiff's Title VII discrimination claim because he did "not sufficiently link the allegedly discriminatory treatment he experienced . . . to his sexual orientation, race, or any other protected characteristic"); *see also Gordon*, 2024 WL 5217932, at *9-10 (dismissing the *pro se* plaintiff's Title VII discrimination claim because his allegations did not suggest any discriminatory motive apart from a stray remark, bare legal conclusions, and treatment that lacked a nexus with any inference of discrimination).

To the extent that Plaintiff argues that the NSM remarks demonstrated discriminatory intent, *see* Opp'n at 3, such argument fails.  Plaintiff does not allege that Bhansali or any employee that played a role in Plaintiff's termination made the NSM remarks.  *See De Santis v. City of New York*, 10 Civ. 3508(NRB), 2011 WL 4005331, at *10 (S.D.N.Y. Aug. 29, 2011) (explaining that "stray remarks [] not attributed to . . . named defendants, but to [individuals] who played no role in the [adverse employment action,] are therefore plainly insufficient to demonstrate discriminatory animus"); *see also Harriram v. Fera*, 21-CV-3696 (RA), 2023 WL 2647856, at *5 (S.D.N.Y. Mar. 27, 2023) (collecting cases and explaining that the court cannot infer discriminatory intent from stray remarks by non-decision-makers or facially neutral statements).

### 2.  Discrimination Claim Under NYSHRL and NYCHRL

Gender discrimination claims under the NYCHRL are subject to more liberal judicial construction than Title VII.  *See Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 257 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013).  The plaintiff "need only 'show differential treatment—that [she] was treated "less well"—because of a discriminatory intent.'"  *Livingston v. City of New York*, 563 F. Supp. 3d 201, 234 (S.D.N.Y. 2021) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).  NYSHRL claims are analyzed under the same, more lenient standard.  *See Moore v. Hadestown Broadway LLC*, 722 F. Supp. 3d 229, 245 (S.D.N.Y. 2024).  Nonetheless, "a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives."  *Anderson v. City of New* York, 712 F. Supp. 3d 412, 435 (S.D.N.Y. 2024).  For the same reasons previously discussed, Plaintiff has failed to plead sufficient facts to show that Henry Schein treated her "less well" *because* she is Trans.  *Compare Anderson*, 712 F. Supp. 3d at 437 (dismissing *pro se* plaintiff's NYCHRL discrimination claim because she did not plead facts that she was treated differently due to her disability or allege

11

facts indicating her race or religion in any way influenced her employer's decision to change her shifts or terminate her), *and Farmer v. Shake Shack Enters.*, *LLC*, 473 F. Supp. 3d 309, 331 (S.D.N.Y. 2020) (dismissing NYCHRL discrimination claim because the plaintiff did not plead facts that permitted the inference that her termination was racially motivated), *with Moore*, 722 F. Supp. 3d at 251-52 (where the plaintiff pleaded that she lost her job and was replaced by a white actress because the defendant wanted to get rid of her as a Black member of the chorus).

Accordingly, because Plaintiff has failed to plausibly allege discriminatory intent, her Title VII discrimination claim against Henry Schein and her NYSHRL and NYCHRL discrimination claims against all Defendants are dismissed without prejudice.

## C. Hostile Work Environment Under Title VII

Defendants argue that Plaintiff does not plausibly allege that their conduct created a hostile work environment, Mot. at 14-15, or harassment, Reply at 13-15, under Title VII. Indeed, Plaintiff's Amended Complaint does not expressly assert a cause of action for hostile work environment or harassment. *See generally* Am. Compl. at 12-21. However, Plaintiff argues that she sufficiently pleads a hostile work environment claim in that the Amended Complaint generally "alleges repeated, gender-based comments and conduct, including the public video and sexually charged remarks, sufficient to state a claim." *See* Opp'n at 3 (citing *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000)).

To plausibly allege a hostile work environment claim, Plaintiff must show "that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510

12

U.S. 17, 21 (1993)).  Episodic incidents do not suffice.  *See Alfano v. Costello*, 294 F.3d 365, 373-74 (2d Cir. 2002).

Here, the entirety of Plaintiff's complaint is based on two isolated incidents that allegedly occurred: (1) in an alleged video skit played at a company-wide sales meeting (which Plaintiff was attending as a Diversity and Inclusion team representative), Plaintiff "thought she saw/heard" a child point at the screen and say, "isn't that the woman you said was a boy"; and (2) while wearing a "colorful striped 2-piece shorts and blazer suit," and describing herself as appearing like a candy cane, an unidentified white male Henry Schein employee responded by stating, "you sure look yummy enough to eat."  *See* Am. Compl. ¶¶ 33-36, 40-45.  While "[t]here is no threshold magic number of harassing incidents" that constitutes a hostile work environment, *Howley*, 217 F.3d at 154 (alteration in original), Plaintiff does not allege that the remarks were prevalent or concerted, nor that they altered the conditions of her employment.  Furthermore, Plaintiff was only employed at Henry Schein for approximately three months and worked remotely, *see* Am. Compl. ¶¶ 15, 22, and there are no allegations that she experienced severe or pervasive discriminatory intimidation, ridicule, or insult during the limited period of her employment.  Therefore, the remarks, standing alone, do not rise to the level sufficient to support a claim for a hostile work environment.  *See Littlejohn*, 795 F.3d at 321; *compare Lyu v. Alfa Chemistry Inc.*, 23-CV-7951 (EK)(ST), 2025 WL 1093134, at *8 (E.D.N.Y. Apr. 13, 2025) ("[A]llegations of sporadic comments by coworkers are insufficient to state a claim for a hostile work environment")*, with Espinoza v. CGJC Holdings LLC*, 23cv9133 (DLC), 2024 WL 3520662, at *4 (S.D.N.Y. July 23, 2024) (holding that the plaintiff alleged facts sufficient to support a hostile work environment by detailing a "barrage" of gender-based comments directed at her by owners and her supervisor).

Thus, Plaintiff fails to state a claim for a hostile work environment.

### D. Retaliation

Plaintiff claims that, after she made complaints of discrimination to Bhansali, Kochman, and Narayanan, they ignore[d] Plaintiff's good faith complaints about discrimination, harras[ed] Plaintiff, overwork[ed] Plaintiff, and, ultimately, terminat[ed] Plaintiff" for opposing discrimination.  Am. Compl. ¶¶ 77-78, 93, 106.  Plaintiff further alleges that Bhansali, Kochman, Narayanan, and Henry Schein "compelled, coerced, aided, and abetted the retaliation." *See id.* ¶ 20; *see generally id.* ¶¶ 90-97, 105-111.  Defendants argue that Plaintiff's retaliation claim fails for two reasons: (1) her communications to Bhansali in her capacity as the Diversity and Inclusion Manager do not constitute protected activity and (2) Plaintiff fails to articulate that the Defendants were aware of her protected activity.  Mot. at 20-23.  Plaintiff counters that she has plausibly alleged that her complaints to Bhansali about the NSM remarks were protected activities and that she plausibly alleges a causal connection between her complaints and her termination.  Opp'n at 3.

### 1. Retaliation Claim Under Title VII

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). "Title VII is violated when 'a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause.'" *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 582 (S.D.N.Y. 2012) (quoting *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)), *aff'd*, 526 F. App'x 124 (2d Cir. 2013).  "[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he

14

has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90.  More specifically, "a plaintiff must present evidence that shows '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Littlejohn*, 795 F.3d 297 at 315-16 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).  Again, the allegations "need only give plausible support" to the foregoing requirements.  *Id.* at 316.

Defendants do not dispute that there was an adverse employment action.  Defendants argue that Plaintiff shared her experience at NSM in the context of her one-on-one meeting as the Diversity and Inclusion Manager, so she was not engaging in a protected activity and there "was no basis for Bhansali or others to receive Plaintiff's comments as a protected discrimination complaint" and, consequently, no possibility that the Defendants knew of the protected activity.  Mot. at 20-22.[6]

### a.  Participation in a Protected Activity and Defendants' Knowledge of the Protected Activity

Plaintiff plausibly asserts that she engaged in a protected activity and Defendants knew of the protected activity.  A plaintiff's complaint to an employer "constitutes a protected activity so long as she articulated the substance of her complaint in such a way that her employer would 'reasonably underst[and]' that it was about unlawful discrimination against her."  *Moore*, 722 F. Supp. 3d at 255 (alteration in original) (quoting *Cardwell v. Davis Polk & Wardwell LLP*, 1:19-cv-

---

[6] Though Defendants do not appear to dispute it, Plaintiff argues in her Opposition that she has plausibly alleged a causal connection between her complaints and her termination.  Opp'n at 3.  "[A] plaintiff must plausibly plead a connection between the act and [her] engagement in protected activity."  *Vega*, 801 F.3d at 90.  "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action."  *Id.*  Plaintiff alleges that she was terminated on June 21, 2022, three business days after June 16, 2022, when she met with Bhansali and raised her concerns about the potentially discriminatory remarks.  Am. Compl. ¶¶ 48, 54-56.  Thus, Plaintiff's complaint alleges that her protected activity was "followed closely by" her termination.  *See Littlejohn*, 795 F.3d at 320 (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).  Thus, Plaintiff has plausibly alleged a causal connection between the protected activity and the adverse employment action.

10256-GHW, 2020 WL 6274826, at *31 (S.D.N.Y. Oct. 24, 2020)). "[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)). Conversely, "[t]o the extent an employee is required as part of her job duties to report or investigate other employees' complaints of discrimination, such reporting or investigating by itself is not a protected activity . . . because merely to convey others' complaints of discrimination is not to oppose practices made unlawful by Title VII" unless that employee is "'critical' about the 'discriminatory employment practices' of her employer, [then] that employee has engaged in a protected activity[.]" *Littlejohn*, 795 F.3d at 318 (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).

Here, Plaintiff alleges that she shared her experience with Bhansali and was critical of the opening video with the potential anti-transgender comment and the "yummy enough to eat" comment made by the unidentified white male made at the NSM. Am. Compl. ¶ 49. She expressed how "she never imagined herself being the victim of such an incident [and] her embarrassment [at] the awkwardness that [ensued.]" *Id.* In turn, Bhansali said "she would look into the video and the comment and find a resolution to the issues." *Id.* ¶ 50. Based on these allegations, Bhansali could have reasonably understood that Plaintiff was complaining about discrimination. To the extent that Plaintiff alleges that Bhansali claimed she would look further into the issues raised, such action indicates Bhansali treated Plaintiff's concerns as a complaint to be addressed further. The above facts clearly allege that Plaintiff was more than a passive participant in expressing her concern and that Bhansali could have reasonably understood that Plaintiff was referencing being discriminated

16

against. *Contra Gordon*, 2024 WL 5217932, at \*11 (recommending dismissal of *pro se* plaintiff's retaliation claim because his complaints made no mention of his alleged gender discrimination).

### 2. Retaliation Claim Under NYSHRL and NYCHRL

Retaliation claims under the NYSHRL and NYCHRL employ a slightly broader standard than Title VII: a plaintiff claiming retaliation must demonstrate "that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Qorrolli*, 124 F.4th at 122 (quoting *Mihalik*, 715 F.3d at 112).

Because her Title VII claim for retaliation survives, Plaintiff's NYSHRL and NYCHRL claims, which are judged under a more lenient standard, also survive. *See, e.g.*, *Colon v. Mark-Viverito*, 16-CV-4540 (VSB), 2018 WL 1565635, at \*6 (S.D.N.Y. Mar. 26, 2018) (finding the plaintiff adequately stated a claim for retaliation under the NYCHRL given that she satisfied the more stringent standard applied to retaliation claims brought under Title VII and, at the time, the NYSHRL); *Farmer*, 473 F. Supp. 3d at 334 (same).

### a. Individual Liability Under NYSHRL and NYCHRL

"Individual liability exists" as to an employee's claim "under NYCHRL and NYSHRL 'if either (1) the individual defendant is an "employer," or (2) the defendant aided and abetted the unlawful discriminatory acts.'" *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 259 (S.D.N.Y. 2025) (quoting *Stanley v. Mount Sinai Health Sys., Inc.*, 21-CV-4619 (VEC), 2023 WL 8355393, at \*13 (S.D.N.Y. Dec. 1, 2023)). "An individual defendant is liable as an employer when that individual has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others, i.e., the power to hire or fire." *Id*. Alternatively, a claim for aiding and abetting need not plead that the aider and abettor had an employer-employee or

supervisory relationship with the plaintiff, but that the aider and abettor "actually participate[d] in the conduct giving rise" to the discrimination or retaliation claim and "share[d] the intent or purpose of the principal actor." *See id.* at 260 (alteration in original) (first quoting *Farmer*, 473 F. Supp. 3d at 337; then quoting *Fried v. LVI Servs., Inc.*, 10 Civ. 9308 (JSR), 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011)); *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) ("[A] co-worker who actually participate[d] in the conduct giving rise to a discrimination claim [can] be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff").

Defendants argue that Plaintiff does not connect Individual Defendants' actions to Plaintiff's gender/gender identity and fails to allege how they aided and abetted her discrimination or retaliation with specificity. Mot. at 18-19; Reply at 13-14. Plaintiff argues that the Amended Complaint sufficiently pleads that Individual Defendants aided, abetted, incited, compelled, or coerced the discriminatory conduct. Opp'n at 4. Specifically, Plaintiff alleges that Narayanan and Bhansali were on the call when she was terminated, Am. Compl. ¶ 55, Bhansali terminated her, *Id.* ¶ 56, and Narayanan ratified her termination, despite knowing it was retaliatory. *Id.* ¶ 21. Additionally, she contends that Narayanan and Kochman approved her termination without consulting HR policies or conducting an investigation. *Id.* ¶ 15. These facts, taken as true, plausibly allege that Bhansali actually participated in the retaliatory conduct because she may have provided the intent that led to Plaintiff's termination after meeting with Plaintiff and hearing Plaintiff's complaints just days prior. *See Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012) (finding that the individual defendant may have potentially aided, abetted, or incited, the company's violation of human rights laws by "provid[ing] the intent and [] complaints" that may have led to the plaintiff's termination). Although Defendants argue that

18

attendance at a termination meeting falls short of liability under an aider and abettor theory, Mot. at 19, Plaintiff's allegations that Narayanan and Kochman approved the termination, allegedly in contradiction of Henry Schein's HR policies plausibly assert that they deviated from the proper termination procedures to expedite Plaintiff's termination just days after she raised her concerns about discriminatory conduct. *See Felder v. Warner Bros. Discovery, Inc.*, 2025 WL 1718098, at *6 (S.D.N.Y. June 20, 2025) (acknowledging that "it is a familiar principle of discrimination law . . . a failure to follow the company's own internal procedures in terminating a plaintiff, 'can . . . be evidence of pretext.'" (quoting *Bagley v. J.P. Morgan Chase & Co.*, 10 Civ. 1592 (PGG), 2012 WL 2866266, at *15 (S.D.N.Y. July 12, 2012))).

Therefore, Defendants' Motion is denied as to Plaintiff's Title VII retaliation claims against Henry Schein and Plaintiff's NYSHRL and NYCHRL retaliation claims against all Defendants.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion is granted in part and denied in part. Defendants' Motion is granted insofar as Plaintiff fails to state a Title VII claim against Individual Defendants and fails to state a NYSHRL and NYCHRL discrimination claim or hostile work environment claim against all Defendants. Accordingly, Plaintiff's Title VII claims against Individual Defendants and purported hostile work environment claim are dismissed. Plaintiff's Title VII discrimination claims against Henry Schein and her NYSHRL and NYCHRL discrimination claims against all Defendants are dismissed without prejudice. Defendants' Motion is denied as to Plaintiff's retaliation claims under Title VII against Henry Schein and NYSHRL and NYCHRL against all Defendants.

SO ORDERED.

/s/_____
ORELIA E. MERCHANT
United States District Judge

March 6, 2026
Brooklyn, New York